Filed 3/9/15  P. v. Waugh CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> JEFF WAUGH, <br><br>     Defendant and Appellant. | A139696 <br><br> (Marin County Super. Ct. Nos. SC162946, SC180335) |

Pursuant to a plea agreement, appellant Jeff Waugh entered pleas of guilty to several drug offenses and admitted two prior drug offense convictions and a probation eligibility limitation.  Waugh seeks reversal of his sentence on the basis that his counsel had a conflict of interest preventing effective representation at the time of sentencing. We affirm.

## I.   BACKGROUND

The Marin County District Attorney filed a second amended information against Waugh that consolidated four separate cases for alleged offenses occurring between October 2009 and April 2012.  Counts 1 through 4 alleged that Waugh possessed methamphetamine, cocaine, and Oxycontin for sale in violation of Health and Safety Code sections 11351 and 11378;[1] counts 5, 7, 8, and 9 alleged that he possessed Oxycontin and methamphetamine in violation of subdivision (a) of sections 11350 and 11377; and count 6 alleged that Waugh brought a controlled substance into a correctional

---

[1] Undesignated statutory references are to the Health and Safety Code.

1

facility in violation of Penal Code section 4573. As to counts 1 through 4, the information alleged that Waugh was subject to sentencing enhancements under section 11370.2, subdivision (b) as a result of having suffered five prior felony convictions for various drug offenses, and that he was ineligible for probation on counts 1 and 2 under Penal Code section 1203.07, subdivision (a)(11) as a consequence of those prior convictions. It was further alleged that Waugh was on bail at the time of the offenses charged in counts 5, 8, and 9 (Pen. Code, § 12022.1, subd. (b)).

On May 3, 2013, Waugh entered guilty pleas to counts 1, 2, 6, and 8, with a *Harvey* [2] waiver. He admitted two prior convictions for drug offenses under section 11370.2, subdivision (a), and probation ineligibility under Penal Code section 1203.07, subdivision (a)(11). The remaining charges and enhancements were dismissed.

Sentencing was continued on June 13, June 20, and June 27, 2013. On June 20, Waugh's counsel advised the court that she had been provided a letter by the prosecution which she asked not be provided to the probation department "until the court has had an opportunity to review the issue that I'm raising." On June 27, Waugh's counsel, without identifying the author, asked that "a letter that was provided to the People by an individual" not be considered by the court in sentencing. Alternatively, she asked that the court "appoint somebody else to rebut that particular letter." She characterized the letter as "very inflammatory" and alleged that it "contains things which Mr. Waugh tells me are patently false." Defense counsel indicated that the individual providing the letter was not a witness, and was "involved very tangentially in the case because her mother kept coming to court," but that due to representation of that individual, "I don't feel that I'm ethically allowed to say anything about that letter because it violates my duty of loyalty to that client." In further argument counsel clarified that she was not objecting to other similar letters that had been submitted, and observed that "it is redundant in most of what it says because there's another young woman who has a similar letter . . . and I have no grounds to object to that."

---

[2] *People v. Harvey* (1979) 25 Cal.3d 754.

Noting that defense counsel had contested the letter's accuracy, the court declined to exclude it: "You've stated succinctly and sufficiently that you doubt the accuracy of those statements and I will consider that. And I don't think I need to appoint conflict counsel just to argue the position of a letter. The letter speaks for itself. Your position is clear. And I will weigh both your position and the letter, the contents of the letter, and the source of the letter. [¶] So I am prepared to direct the DA's office to provide me with those letters. I will not appoint conflict counsel."

Prior to the July 18, 2013, sentencing hearing, Waugh's counsel submitted a mitigation statement requesting a probationary sentence. The People submitted a sentencing statement, which included letters from Alexandra Doe, Alexandra's mother, Michela Doe, C.S., and Pierre Ahuncain, a police sergeant with the Marin County Major Crimes Task Force. The letters from Alexandra and Michela both alleged that Waugh had manipulated them and provided them, as well as several other young women, with addictive drugs in exchange for sex over extended periods of time. Michela referred to Waugh as a "sexual predator." The letter from Alexandra's mother alleged that Waugh had fed Alexandra's addiction and abused her emotionally, psychologically, and physically. Alexandra's mother also said that she had met other mothers whose daughters had gone through the same experience. C.S. wrote that Waugh had seduced her daughter Erika S. with drugs, who was living in an addicted lifestyle due to Waugh's continuing influence over her. The letter from Ahuncain stated that his unit had received multiple complaints over many years that Waugh provided illegal narcotics to young females. The probation department's presentence report included several letters in support of Waugh, as well as duplicates of the letters from Alexandra, Alexandra's mother, Michela, and Ahuncain. The probation officer wrote that "some of the letters speak of [Waugh as] an older man[3] who baits his trap for younger women with money and drugs—one of the women was noted to be seventeen." The probation officer stated that Waugh had been unsuccessful at earlier attempts at drug rehabilitation and was not

---

[3] Waugh was 50 years old at time of sentencing.

considered an appropriate candidate for probation. Both the People and probation officer recommended aggravated and consecutive prison sentences.

Waugh's counsel submitted a supplemental mitigation statement prior to the sentencing hearing. In that statement, she objected to the "outrageous and libelous statement" that Waugh had "engaged in sexual acts with a child." She argued that Waugh was "not a pedophile" and "Waugh's sexual behavior [had] no place in sentencing briefs or recommendations." Counsel further represented that "Waugh vigorously denies ever bedding a seventeen-year-old girl. The statement is completely untrue. The young woman referred to as seventeen was in fact an adult, a fact supported by her designation as a co-defendant in one of the cases before this court." This was apparently a reference to Erika S., who was arrested with Waugh twice in 2010. Other than the single reference in the presentence report, nothing in the record indicates that Erika S. was 17 when she met Waugh—neither C.S.'s letter nor the People's sentencing statement make any such claim. The People only alleged that Waugh furnished narcotics to "young, drug-addicted adults."

At sentencing, the court indicated that it had reviewed the presentence report, the People's sentencing statement, both defense mitigation statements, and several letters submitted on Waugh's behalf. Waugh's counsel asked the court to impose an "ESS" sentence (i.e., a term of imprisonment with execution of sentence suspended). The court noted that Waugh had been given a "number of second chances" and that it had considered, but rejected, an ESS sentence as inappropriate in light of Waugh's history.

Waugh received an aggravated four-year term on count 2; a concurrent three-year term on count 1; a consecutive one-year term on count 6 (aggravated four-year term with three years suspended); and eight consecutive months on count 8 (one-third of the base term of 24 months). The court imposed six consecutive years as sentence enhancements under section 11370.2. An additional eight months was imposed on a separate case and the total term of 12 years and four months was imposed as a "split" sentence (Pen. Code, § 1170, subd. (h)(5)), with the first six years to be served in the county jail and the balance suspended on community release.

Waugh filed a timely notice of appeal.[4]

## II.    DISCUSSION

Waugh contends that the trial court should have replaced defense counsel before sentencing because of a conflict of interest.[5] " 'Conflicts of interest may arise in various factual settings. Broadly, they "embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his responsibilities to another client or a third person or *by his own interests*." ' [Citation.]" (*People v. Doolin* (2009) 45 Cal.4th 390, 417, 459 (*Doolin*).)

A claim of conflicted representation is one variety of claims that counsel provided ineffective assistance. (*People v. Mai* (2013) 57 Cal.4th 986, 1009–1010 (*Mai*).) The right to effective assistance of counsel, secured by the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution, "includes the right to representation free of conflicts of interest that may compromise the attorney's loyalty to the client and impair counsel's efforts on the client's behalf." (*Mai*, at p. 1009, citing *Glasser v. United States* (1942) 315 U.S. 60, 69–70 and *Doolin*, *supra*, 45 Cal.4th at p. 417.) To obtain reversal on such grounds, a defendant "must demonstrate that (1) counsel labored under an actual conflict of interest that adversely affected counsel's performance, and (2) absent counsel's deficiencies arising from the conflict, it is reasonably probable the result of the proceeding would have been different. [Citations]." (*Mai*, at p. 1010.)

Waugh insists that he was denied effective representation at sentencing because his attorney was precluded, by virtue of prior representation, from challenging or impeaching a letter submitted to the court by a woman alleging that Waugh had provided

---

[4] Postsentencing motions for reconsideration or modification of his sentence, and to withdraw his guilty pleas, were denied.

[5] Waugh contends that trial counsel moved to withdraw from representation. She did not. Her request was only for the court to "appoint somebody else to rebut that particular letter." The trial court clearly understood the request to be so limited, responding that "I don't think I need to appoint conflict counsel just to argue the position of a letter."

her with addictive drugs in exchange for sex.  We question whether Waugh has provided an adequate record for review given that nothing in the record before us identifies with any precision the exact letter Waugh complains of and, as Waugh's trial counsel acknowledged, "at least one other letter addresses exactly the same sort of thing." However, we can surmise that the former client of Waugh's counsel and source of claimed conflict was Alexandra.[6]  In any event, we find that Waugh fails to meet his burden to establish either ineffective representation or prejudice.

"In the context of a conflict of interest claim, deficient performance is demonstrated by a showing that defense counsel labored under an actual conflict of interest '*that affected counsel's performance*—as opposed to a mere theoretical division of loyalties.' " (*Doolin, supra*, 45 Cal.4th at p. 417, citing *Mickens v. Taylor* (2002) 535 U.S. 162, 171 (*Mickens*).)  " 'An "actual conflict," for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance.' " (*Doolin*, at p. 418.) "[A] determination of whether counsel's performance was 'adversely affected' under the federal standard 'requires an inquiry into whether counsel "pulled his punches," i.e., whether counsel failed to represent defendant as vigorously as he might have, had there been no conflict.' " (*Ibid*.)  We see no evidence that counsel did so here.

Waugh's counsel submitted a detailed mitigation statement and advised the court that the letter from her former client contained "things which Mr. Waugh tells me are patently false."  Then, in response to multiple letters submitted through the probation department, she provided a supplemental mitigation statement challenging, without limitation, the "highly inflammatory, inaccurate, prejudicial and vitriolic letters sent to the Court" and other allegations of manipulative behavior by Waugh.  She argued that "Mr. Waugh's sexual behavior has no place in sentencing briefs or recommendations."

---

[6] Waugh's counsel, in discussing the potential conflict with the court, told the court that "[t]he mother can say whatever she wants."  The only mother to have submitted a letter in addition to a letter from her daughter was Alexandra's mother.  Nothing in the sentencing materials appears to have been submitted by Michela's mother and, although C.S. submitted a letter, her daughter Erika S. did not.

She acknowledged that the multiple letters presented to the court "contain some elements of truth," but denied that Waugh had introduced any women to drugs, and noted that "[t]he women who wrote the letters admitted they were users before they met Mr. Waugh." At the time of sentencing, defense counsel again argued that hearsay statements in the letters were not appropriate factors in aggravation of sentence "[n]otwithstanding the fact that I'm sure that some, if not a good deal, of what was said in those letters is true, nobody has said that [Waugh] was the one who first gave anybody their first taste of drugs, whether it be heroin or methamphetamine or cocaine."

On appeal, Waugh suggests that substituted counsel would have been able to "do more" and could have presented information to challenge the accuracy of statements contained in the letter and the credibility of its author. Waugh suggests that an attorney without a conflict of interest could have secured copies of prior police and probation reports concerning the letter writers, and presented evidence of criminal convictions and histories of drug addiction and failed rehabilitation. He did not, however, present any such evidence in the trial court to challenge or impeach the very similar allegations presented in other letters. Puzzlingly, Waugh argues here that his trial counsel was unable to challenge any inaccuracies in the other letters, because "disput[ing] the assertions made in one letter, but not the other, . . . would have suggested that she was impliedly conceding that everything contained in the unchallenged letter was true and as such should be credited by the trial court." We question why this would be so.

Counsel had already specifically advised the court that she challenged the veracity of the allegations in the first letter, and she argued vigorously that none of the information about Waugh's sexual behavior was relevant in any event. She advised the court that she had an investigator attempting to locate the individuals referenced in the other letters, and asked in the supplemental mitigation statement for an opportunity to "present evidence to refute the charges leveled in those letters," stating that she was prepared to present rebuttal "if necessary." Trial counsel's arguments at the sentencing hearing indicate that she was ultimately unable to present evidence to impeach the other letters before the court not from any reluctance to do so, but rather because "some, if not

a good deal, of what was said in those letters is true." The record does not reflect that Waugh's trial counsel "pulled her punches" in any respect. Waugh presents nothing but unsupported speculation that an appointed conflict counsel could have, or would have, presented any different argument or any credible evidence that was not presented. (See *Mai*, *supra*, 57 Cal.4th at pp. 1014, 1018 [" ' "[w]e cannot evaluate alleged deficiencies in counsel's representation solely on defendant's unsubstantiated speculation" ' "].)

Moreover, Waugh fails to establish a reasonable probability that the result of the proceeding would have been different had another attorney represented him. (*Mai*, *supra*, 57 Cal.4th at p. 1010.) He argues that prejudice is presumed under these circumstances and seems to contend that a rule of per se reversal should apply. He is incorrect. The general rule is that a defendant alleging a Sixth Amendment violation must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*Mickens*, *supra*, 535 U.S. at p. 166; *Doolin*, *supra*, 45 Cal.4th at pp. 428–430.) Only where assistance of counsel has been denied entirely, or during a critical stage of the proceeding, is case-by-case inquiry unnecessary. (*Mickens*, at p. 166 ["only in 'circumstances of that magnitude' do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict"].)

Waugh's reliance on *Holloway v. Arkansas* (1978) 435 U.S. 475 (*Holloway*) and *Cuyler v. Sullivan* (1980) 446 U.S. 335 (*Cuyler*) is therefore misplaced. In *Holloway*, the high court found "inherently suspect" the compelled concurrent representation of multiple codefendants over objection. (*Holloway,* at pp. 488–490 ["whenever a trial court improperly requires joint representation over timely objection reversal is automatic"].) The Supreme Court declined to extend *Holloway*'s automatic reversal rule to concurrent multiple representation of jointly accused but separately tried defendants in *Cuyler*, where there was no objection, and the trial court was aware of nothing but "a vague, unspecified possibility of conflict, such as that which 'inheres in almost every instance of multiple representation.' " (*Mickens*, *supra*, 535 U.S. at p. 176.) *Cuyler* permits a presumption of prejudice only if the defendant demonstrates that counsel

8

"actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." (*Cuyler*, at p. 350.) "The purpose of [these exceptions] from the ordinary requirements of *Strickland* [*v. Washington* (1984) 466 U.S. 668 (*Strickland*)] . . . is . . . to apply needed prophylaxis in situations where *Strickland* itself is evidently inadequate to assure vindication of the defendant's Sixth Amendment right to counsel." (*Mickens*, at p. 176.)

Outside the context of multiple concurrent representation, our own Supreme Court has made clear that the appropriate framework for assessing prejudice arising from attorney conflicts of interest is that articulated in *Strickland v. Washington*, *supra*, 466 U.S. at p. 688, requiring a defendant to show both counsel's deficient performance and a reasonable probability that, absent counsel's deficiencies, the result of the proceeding would have been different. (*Doolin*, *supra*, 45 Cal.4th at pp. 417, 428; *Mai*, *supra*, 57 Cal.4th at p. 1009.) Waugh fails to meet this burden.

The court indicated that it had read and considered *all* of the letters (including those favorable to Waugh). The letter in issue here was only one of several submitted to the court from multiple sources, making the same or very similar allegations about Waugh. As counsel candidly observed when seeking to exclude this letter in the trial court, "I don't think that just taking one letter out of the packet is going to change your Honor's view of what's happening, especially in light of the fact that at least one other letter addresses exactly the same sort of thing."

The probation report recommended denial of probation and noted, among other factors in aggravation (Cal. Rules of Court, rule 4.414), that the crimes were committed while Waugh was on intensive probation supervision, and while out on bail in three of his four cases; Waugh's prior record indicated a pattern of regular felony drug sales; his prior performance on probation was "notably poor"; and Waugh had expressed no specific remorse for his crimes. In sentencing Waugh, the court did not even mention the letters, but focused on Waugh's history of failure to address his substance abuse issues and the number of "second chances" given to Waugh by the sentencing judge and by other judges on the court. In explaining its decision to deny an ESS sentence, the court told Waugh

that "when you're out on the streets, you're harming yourself, you're harming your family, and you're harming the general public. . . . I see that the only way to control you is to keep you in custody."

We find nothing in this record to indicate that the court's view of Waugh was somehow unfairly skewed by consideration of a single letter, or that presentation of any other evidence or argument by defense counsel would have likely obtained a different outcome.

### III.    DISPOSITION

The judgment is affirmed.


_____
BRUINIERS, J.


WE CONCUR:


_____
JONES, P. J.


_____
SIMONS, J.

10